746 P.2d 937

STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, Petitioner,

v.

SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA, Honorable Rudolph J. Gerber, a Judge Thereof, Respondent Judge,

and

James Robert BURRUS, Real Party in Interest.

No. 1 CA–SA 167.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 24, 1987.

Review Denied Jan. 12, 1988.

Robert K. Corbin, Atty. Gen. by Lisa T. Hauser, Asst. Atty. Gen., Phoenix, for petitioner.

Allen, Kimerer & LaVelle by Michael D. Kimerer, Gary Davidson, Phoenix, for real party in interest.

## OPINION

GRANT, Judge.

We are asked to decide whether the indictment against Burrus has been properly dismissed for the third time by the trial court.

This case began on May 15, 1979, when Burrus was charged by indictment with one count of fraudulent scheme and five counts of forgery. The case first came to this court as an appeal by the state from the trial court's order of May 22, 1981, dismissing the indictment, with prejudice, for failure "to bring the defendant to trial within the time limits of Arizona's speedy trial rules." *State v. Burrus*, 134 Ariz. 251, 655 P.2d 371 (App.1982) (Burrus I). Burrus I was reversed because the trial court had improperly granted the defendant's motion to dismiss. The matter was remanded for trial.

We reviewed the case a second time as an appeal by the state from an order of the trial court dated March 24, 1983 dismissing the indictment with prejudice for failure to bring Burrus to trial within the time limits imposed by A.R.S. § 31–481, The Interstate Agreement on Detainers. *State v. Burrus*, 151 Ariz. 572, 729 P.2d 926 (App.1986) (Burrus II). We reversed the order of the trial court and remanded the case. Burrus had become a fugitive from justice after his original indictment. Arizona authorities then learned he was in federal custody and placed a detainer against him. In November, 1980, while in federal prison in Colorado, Burrus requested final disposition of the Arizona charges pursuant to Article III of the Interstate Agreement on Detainers. After complicated correspondence between state and federal authorities, the Maricopa County Sheriff took custody of Burrus on February 11, 1981. Burrus's motion to dismiss which was granted resulted in the first appeal (by the state), *Burrus I*. Thereafter, the state again made efforts to return Burrus to Arizona for trial. Burrus again filed a motion to dismiss. This time he argued that the state failed to try him within 180 days of his request for final disposition (November, 1980) under Article III of the Interstate Agreement. In Burrus II, this court held that there had been substantial compliance with Article III of the Interstate Agreement. Burrus II held that a 32–day delay should have been excluded from the 180–day period since it was a delay caused by pretrial motions filed in Burrus's behalf. The Arizona Supreme Court accepted review of Burrus II and modified it holding that (1) the speedy trial provision of the Interstate Agreement was tolled by a continuance granted to allow Burrus more time for pretrial discovery and (2) that Burrus's request to be returned to federal custody constituted waiver of his right to be tried on state charges before being returned to the federal system. *State v. Burrus*, 151 Ariz. 581, 729 P.2d 935 (1986). The supreme court held that Burrus's return to federal custody did not prohibit his second return to Arizona for continued prosecution on the original charges.

This case comes before this court now for the third time, as a special action. The state has had its indictment against Burrus dismissed in the trial court for the third

time, and seeks reinstatement of that indictment through special action in this court. For purposes of the Interstate Agreement on Detainers, A.R.S. § 31–481, we must decide whether any part of a four month period, between December 22, 1982 and March 14, 1983, should be excluded or considered part of the 180 days allowed by statute for the state to prosecute Burrus.

In 1983 the state moved to exclude some of this time, but that motion was denied without prejudice by the court having jurisdiction of the matter. The court did so because it did not feel competent to rule while a collateral proceeding was pending before the Arizona Supreme Court. Evidently, no final ruling with prejudice ever issued on the motion after that Supreme Court proceeding was concluded, and there was no continuance granted by the court having jurisdiction of the matter. *See* A.R. S. § 31–481 art. III(a) and IV.

Article VI(a) of the Interstate Agreement states that:

> In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

In addressing the practical operation of this provision, we remember that the Interstate Agreement is a remedial statute and should be liberally construed to achieve its purposes, A.R.S. § 31–481, art. IX, including a speedy trial and the expeditious and orderly disposition of charges. But it also has strict procedural requirements that must be followed. *Stroble v. Anderson*, 587 F.2d 830, 839 (6th Cir.1978). The court below found that the state was required by the section to "make a motion, and obtain a ruling, in order to exclude time when the defendant is unavailable, as is the case here." The state contends that it was clear that Burrus was unavailable, and that the trial judge erroneously failed to toll the running of time under the statute. It appears to us that Burrus is correct. The state took no action after December 22,

1982, to stop the time from running. The language of the statute requires more than a general observation. It requires a determination by the "court having jurisdiction of the matter." A.R.S. § 31–481, art. VI(a).

When a state or defendant seeks more time than that allowed by the statute, a court may grant a continuance for good cause in open court, with the defendant or his counsel present. *See* A.R.S. § 31–481, arts. III(a) and IV(c). A reading of the terms of the statute in a mutually consistent manner reveals that the proper way to toll the time running is to obtain a ruling that a defendant is unavailable for trial.

In the meantime, Burrus had already obtained a dismissal in *Burrus I*—reversed as erroneous by this court—and had been returned to federal custody in California. This turn of events is unfortunate for the state, because the intent of the Interstate Agreement is to give a receiving state only one chance to try a transferred defendant before returning him to the sending jurisdiction. If no trial is had before returning the defendant, the Interstate Agreement mandates that the indictment "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." A.R.S. § 31–481, art. III(d). Other jurisdictions have frequently dismissed otherwise valid indictments for violation of the rule. We see here a presumption that once Burrus was returned to federal custody without trial in Arizona, the state's chance to try him was gone. Whether under article III or IV, the operative language mandating dismissal is the same. *Accord United States v. Eaddy*, 595 F.2d 341 (6th Cir.1979); *United States v. Cyphers*, 556 F.2d 630 (2d Cir. 1977); *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir.1975); *State v. Keener*, 224 Kan. 100, 577 P.2d 1182 (1978); *see also People v. Higinbotham*, 712 P.2d 993 (Colo.1986) (must dismiss unless prosecutor can show lack of prejudice to defendant). The statute makes no exceptions for erroneous dismissals of an indictment. Indeed, the district court in San Francisco knew of that dismissal, yet was emphatic in its observation that Arizona

had had its one and only chance to try Burrus. This point is not dispositive, but it weighs against the state. *See Walker v. King*, 448 F.Supp. 580, 586 (S.D.N.Y.1978) ("The second purpose of the Act, to minimize disruptions is better served by permitting only one transfer.")

Despite these problems, the state sought Burrus's repatriation. Burrus instituted proceedings to dismiss the reinstated indictment against him, based on the state's alleged violation of the Interstate Agreement trial time provisions. He was justified in pursuing that dismissal. Certainly he cannot be penalized for asserting a colorable legal argument in his favor. Before Arizona could again regain custody of defendant, however, a federal injunction issued, barring federal authorities from recognizing any Arizona proceeding against defendant. And no final ruling had yet issued in Arizona regarding Burrus's unavailability for trial. Thus it appears that no time was tolled by the court having jurisdiction of the matter. Evidently there was no state effort to obtain such a further ruling after the initial dismissal without prejudice, and the state comes now seeking the ruling we think it should have sought four years ago.

As Judge Froeb notes in his dissent, it is undisputed that Burrus was out of state, essentially unable to stand trial during the time in question. But no such determination was made by the court having jurisdiction of the matter at the time; thus the terms of the statute were not complied with, and the running of time was not tolled. In light of the statute's clear requirement that the court having jurisdiction of the matter make a finding of unavailability in order to toll the time, we merely state assertions of defendant's unavailability are not sufficient to satisfy a statute that clearly requires more.

We agree with the reasoning in *Stroble v. Anderson*, 587 F.2d 830 (6th Cir.1978), a case similar to ours. *Stroble* found fatal state error in the lack of a judicial finding of unavailability, as we have here. *Id.* at 838. It observed that no continuances sufficient to preserve the action were granted "for good cause shown in open court." *Id.*

at 839. It declined to accept anything less than strict compliance with all statutory terms, in light of the "highly structured procedural requirements of the I.A.D." and the "stringent enforcement sanction[s]" thereof. *Id.* at 839–40. And we agree with its comment that "Article VI [at issue in our case] was written as a protective measure for a transferred prisoner, [and] cannot appropriately be turned from a shield for the defendant into a sword for the prosecution." *Id.* at 838.

We conclude that the trial judge correctly dismissed the case in 1983 based on the speedy trial provisions of the Interstate Agreement. Burrus's activities during the period in question did not amount solely to dilatory tactics. It cannot be said that Burrus had no legal right to act as he did. Certainly he should not be penalized for seeking to preserve the dismissal of an indictment against him. Since the state sought reinstatement of that indictment, we cannot hold that those four months or any part thereof were a delay caused solely by the defendant Burrus which would thus toll the running of the time.

The dismissal in 1983 for violation of the Interstate Agreement speedy trial provision was correct. The time has expired for the state to try Burrus, and we affirm the dismissal of the indictment with prejudice by the Superior Court.

GREER, P.J., concurs.

FROEB, Judge, dissenting:

The essential issue in this special action is whether the time between December 22, 1982, and March 24, 1983, should have been excluded or whether it must be considered part of the 180 days in which the defendant could be tried by the State of Arizona under the Interstate Detainer Act.

The trial judge in his March 27, 1987, order addressed this question and held that the effort of the state in 1983 to exclude the time because of the unavailability of the defendant for trial failed because the then trial judge did not grant the request. He stated:

Defendant Burrus was in custody when he invoked the provisions of Article 3 of the IAD. When a defendant is out-of-state under Article 3, the time continues to run. Article 6 of the IAD requires the State to make a motion, and obtain a ruling, in order to exclude time when the defendant is unavailable, as is the case here. The State's only effort to secure such a ruling appears in its Motion to Exclude, dated January 17, 1983, which, though argued, was never granted by Judge Patterson or any other judge, so the time has not been excluded. As a result, under the provisions of Article 3, where the State has 180 days in which to try the defendant, the time limits have expired.

Accordingly, for the foregoing reasons, defendant's Motion to Dismiss is granted.

There is no dispute over the fact that during this period in 1983 the defendant could not be brought to trial in Arizona because during that time he had instituted proceedings in the U.S. District Court in California to prevent federal prison authorities from transferring him to Arizona.

The trial judge in 1983 denied *without prejudice* the state's motion to exclude because "a collateral matter" was then pending before the Arizona Supreme Court. By denying the motion "without prejudice," no rights or privileges of the state were waived or lost. Right or wrong, this is where the matter was left for the next four years while defendant was under Federal custody. The matter was returned to the Arizona court system in 1987 after federal proceedings were concluded.

Thus, the question of excluded time was once again before the Maricopa Superior Court in 1987. The trial judge refused to exclude the time, as noted earlier, because apparently he did not believe he had authority to do so. In his view, as set forth in his order quoted earlier, the 180 day period to start trial ran out in 1983 and the court in 1987 could not now make the determination to exclude part of it. In my view, the trial judge was the judge "having jurisdiction of the matter," and had the authority to do so and should have excluded the time in question.

Contrary to the majority view, this case is not similar to *Stroble v. Anderson,* 587 F.2d 830. In *Stroble,* the defendant was returned to Michigan for trial. The trial was continued through informal procedures not in open court and without defendant or his counsel present. Therefore, the continuance did not serve to toll the time, and the indictment was dismissed for the state's failure to bring defendant to trial within 180 days.

In this case, following oral argument attended by defense counsel, the defendant's motion to dismiss was denied and the state's motion for excluded time was dismissed without prejudice on January 31, 1983. Thus, the informal procedures disapproved of in *Stroble* are not present here.

Since the defendant was unable to stand trial during the period from December 22, 1982, to March 24, 1983, the language of Article VI(a) of the Interstate Agreement on Detainers mandates that the time be tolled. That being the case, the dismissal of the indictment should be set aside and the trial should proceed.