Tammy CUNNINGHAM *v.* STATE of Arkansas

00-202                                    14 S.W.3d 869

Supreme Court of Arkansas
Opinion delivered April 20, 2000

*Hagier & Horwart*, by: *J. Eric Hagier*, for petitioner.

*Mark Pryor*, Att'y Gen., by: *Darnisa Evans*, Sr. Ass't Att'y Gen., for respondent.

Том GLAZE, Justice. Petitioner Tammy Cunningham files her petition with us requesting we issue a writ of prohibition to the Benton County Circuit Court, ordering it to dismiss a felony count of manufacturing methamphetamine. We accepted jurisdiction of this matter under Rule 1-2(a)(3) and Rule 1-2(b)(1),(2),(3), and (5) (1999). Basically, Cunningham had a felony conviction and charge filed against her and pending in Missouri and

Arkansas at the same time. She now claims Arkansas authorities violated the Interstate Agreement on Detainers (IAD), Ark. Code Ann. § 16-95-101, Article III(a) (1987), by failing to bring her to trial within the statute's limitation period of 180 days after she notified the Arkansas prosecuting attorney of her place of imprisonment in Missouri and requested a final disposition of the Arkansas felony charge. Cunningham's contention is without merit; therefore, we deny her petition.

On September 22, 1997, Cunningham was convicted in Missouri of possession of a controlled substance and sentenced to three years; she commenced serving that sentence on November 13, 1998. On December 12, 1997, the Benton County Prosecuting Attorney obtained an arrest warrant against Cunningham for the methamphetamine charges. The Arkansas drug crimes were alleged to have occurred on October 13 and 15 of 1997 — after her Missouri conviction, but before she started serving her term in prison in that state on November 13, 1998. On December 15, 1998, Cunningham, while in a Missouri correctional center, signed an Interstate Detainer Agreement, which was mailed to the Arkansas prosecutor and received by him on December 23. The agreement on detainer notified the prosecutor of Cunningham's request that a final disposition be made of the Arkansas drug charge pending against her. On February 24, 1999, Cunningham was brought to Arkansas and placed in jail, after which she was formally charged and arraigned in early March 1999. While Cunningham was in Arkansas, Missouri released her on parole on March 26, 1999.

On July 12, 1999, the Benton County Circuit Court appointed counsel for Cunningham, and four different trial settings were scheduled by the court between July 12 and September 27, 1999. All trials were continued, and those continuances were charged against Cunningham. On September 27, Cunningham moved to dismiss the Arkansas drug charge, arguing the State had violated the IAD 180-day limitation period. She claimed the 180-day period commenced when the Benton County Prosecutor received her notice on December 23, 1998, and ended on June 21, 1999. She points out that not only had she not been brought to trial within 180 days from the receipt of her notice in Arkansas, but also over 200 days had expired before she was even appointed defense counsel.

The State rejoined that the IAD-limitation period was inapplicable after Missouri authorities placed Cunningham on parole on March 26, 1999, and that Arkansas's speedy-trial rule and limitation period of twelve months applied to her felony charge. *See* Ark. R. Crim. P. 28.1 and 28.2 (1999). The State submits Arkansas's speedy-trial time commenced when Cunningham was incarcerated on February 24, 1999. Under the State's view, Cunningham needed to be tried on or before February 24, 2000. Thus, because all continuances of Cunningham's trial have been attributable to her since July 12, 1999, the State asserts Arkansas's speedy-trial limitation has not, as yet, expired. We agree.

■ Article III(a) of Arkansas's Interstate Agreement on Detainers, *see* § 16-95-101, is the provision upon which Cunningham relies, and it reads in relevant part as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

In analyzing the IAD, we first note that it represents a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *See Cuyler v. Adams*, 449 U.S. 433 (1981). The IAD is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const. art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. *Id.* The Supreme Court in *Carchman v. Nash*, 473 U.S. 716, 719 (1985), stated that the purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." It has also been stated that the IAD is "only concerned that a sentenced prisoner who has entered into the life of the institution to which he or she has been commit-

ted for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings relating to pending charges in another jurisdiction." *United States v. Roberts*, 548 F.2d 665, 670-71 (6th Cir.), *cert. denied*, 431 U.S. 931 (1977).

■ The issue to be decided is whether Cunningham continued under the term of her imprisonment for IAD purposes after Missouri released her on parole. The courts having construed Article III(a) have generally stated that once a prisoner is released on parole, he or she is no longer in the class of prisoners covered by the IAD. *See United States v. Black*, 609 F.2d 1330 (9th Cir. 1979); *see also United States v. Saffeels*, 982 F.2d 1199 (8th Cir. 1992) (when revocation of prisoner's parole was pending, even though prisoner was in jail awaiting trial, his status was no different than that of a pretrial detainee, and "by its own terms, Article III [of the IAD] only applies during the period when a prisoner continues to serve a term of imprisonment"); *cf. United States v. Reed*, 620 F.2d 709 (1980) (neither a pretrial detainee nor a parole violator has a sufficient interest in the rehabilitation programs of his confining institution to justify invocation of the IAD); *United States v. Harris*, 566 F.2d 610 (8th Cir. 1977) (where court held IAD did not apply to a pretrial detainee who was awaiting trial and not subject to imprisonment term, and stated the IAD appears plainly limited to a prisoner — serving a term of imprisonment).

■ State cases have held similarly. For example, in *State v. Dunlap*, 290 S.E.2d 744 (N.C. App. 1982), the court held that, upon the release of a defendant on parole from prison in New York before the expiration of the 180-day period, the IAD no longer governed defendant's right to a speedy trial. The *Dunlap* court explained that the defendant's right to a speedy trial was fully protected under North Carolina's Speedy Trial Act, and it further reasoned that once the defendant was released on parole, the cloud of the detainer no longer had an adverse effect on the prisoner's status within the prison. *See also Womble v. State*, 957 S.W.2d 938 (Tenn. Crim. App. 1997) (protections of the Compact do not extend to a defendant who has been placed on parole in the sending state; the plain language of the Compact indicates that a "term of imprisonment" does not include a term of parole); *State v. Foster*, 812 P.2d 440 (Or. App. 1991) (when defendant was released on parole, the relevant term of imprisonment ended).

█ While not cited to us, our research reveals the case of *Snyder v. Sumner*, 960 F.2d 1448 (9th Cir. 1992), where the court held that the IAD continued to apply to a prisoner when he or she was paroled by the sending state while awaiting trial in the receiving state. The court further concluded that once the defendant had been received by the receiving state, the IAD's limitation period started to run and could not be turned off by a grant of parole by the sending state.[1] The *Snyder* court expressed its concern that to hold the IAD inapplicable in these circumstances would undermine the Act's purposes by giving the receiving state a way to bypass the requirements of the IAD. We simply do not share the *Snyder* court's concerns that the IAD's requirements can or will be so easily manipulated by the states, but more importantly, we believe that the rationale in *Snyder* ignores the plain language contained in Article III(a) of the Act, which, by its own terms, provides the IAD only applies during the period when a prisoner continues to serve a term of imprisonment.

In conclusion, we acknowledge Cunningham's reliance on *Loane v. State*, 12 Ark. App. 374, 677 S.W.2d 864 (1984). There, the defendant had been serving a sentence in Oklahoma when an information was filed against him in Arkansas and he was brought to this state pursuant to the IAD. While in Arkansas, the defendant was paroled by Oklahoma authorities and released on bond in this state. For that reason, the trial court ruled that Rule 28.1, rather than the IAD, provided the speedy-trial rules to be applied from the time of the defendant's release on bond. The court of appeals disagreed, holding that the trial court erred when it refused to apply the IAD speedy-trial rules just because the defendant was out on bond. The court of appeals extracted from *Blackmon v. Weber*, 277 Ark. 393, 642 S.W.2d 294 (1982), the fact that the defendant there had been out on bond, yet this court had "held that the speedy-trial rules of the [IAD] still applied." *Loane*, 12 Ark. App. at 376.

█ In short, while *Loane* might be read to support Cunningham's position, that decision made no mention of the Supreme

---

[1] We note that in *Snyder* the Ninth Circuit Court of Appeals reversed the district court which relied on *United States v. Black*, 609 F.2d 1330 (9th Cir. 1979), *cert. denied*, 449 U.S. 847 (1980). The lower court decided the IAD no longer applied when Snyder was paroled. The *Snyder* court distinguished its earler *Black* decision by stating that defendant Black lost his IAD right because he was sent to the receiving state to serve a sentence already imposed.

Court's *Cuyler* holding, nor was the *Loane* court given the benefit of the arguments and other legal authorities of which we have been apprised in this appeal. Nonetheless, to the extent our decision conflicts with *Loane*, that decision is overruled.

For the reasons above, we deny Cunningham's petition.