2003 WY 169

**Janvirgo Thunor Akihoka ODHINN,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–281.

Supreme Court of Wyoming.

Dec. 30, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: H.M. Hoke MacMillan, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶1] Janvirgo Thunor Akihoka Odhinn appeals a district court's order denying his motion to dismiss criminal charges filed against him in Wyoming based upon alleged violations of the Interstate Agreement on Detainers (IAD). He claims his statutory and constitutional rights to a speedy trial were violated when he was not brought to trial within 180 days of the date Wyoming received notification of his request for final disposition of the charges. We hold Mr. Odhinn's right under the IAD to final dispo-

sition within 180 days was violated and reverse the district court's order.

## ISSUES

[¶2] Mr. Odhinn presents the following issues:

### ISSUE I

Whether the State of Wyoming denied Appellant his right to speedy trial under Article III of the Interstate Agreement on Detainers (IAD)?

### ISSUE II

Whether the State of Wyoming denied Appellant his right to speedy trial as guaranteed by the 6th Amendment to the U.S. Constitution and by Article I, § 10 of the Wyoming Constitution by the failure of the Nebraska Detainer Administrator to promptly send Appellant's Interstate Agreement on Detainer (IAD) demand for a speedy trial to Wyoming and/or as a result of the inaction by the State of Wyoming under the Interstate Agreement on Detailers?

## FACTS

[¶3] In 1997, Mr. Odhinn was sentenced to two terms of two to four years in the Nebraska Department of Corrections on two convictions for theft. He escaped from the Nebraska facility in 1998. In August of 1999, the county attorney's office in Albany County, Wyoming filed an information alleging that Mr. Odhinn committed two counts of larceny in Laramie, Wyoming. The Albany County circuit court issued an arrest warrant and Mr. Odhinn was arrested in Utah on August 10, 1999. He was then extradited to Nebraska to complete his sentences on the theft charges and face prosecution for the escape.

[¶4] On May 18, 2000, the Albany County sheriff's office notified Nebraska that Mr. Odhinn was wanted in Wyoming on larceny charges and requested a detainer.[1] Mr.

---

1. A detainer is " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66

L.Ed.2d 641 (1981), quoting *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) and H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970)

Odhinn was served with notice of the Wyoming charges on June 6, 2000. The notice informed him of his right to request final disposition of the Wyoming charges and be brought to trial in Wyoming within 180 days of delivery of his request to the Albany County prosecutor and court. That same day, Mr. Odhinn signed IAD Form II requesting final disposition of, and expressly waiving extradition with respect to, the Wyoming charges. At that time, Nebraska authorities did not advise Wyoming of Mr. Odhinn's request and waiver.

[¶ 5] On June 20, 2000, Nebraska notified the Albany County sheriff's office that Mr. Odhinn was due to be discharged on July 16, 2000. Prior to his release, the Nebraska county court presented him with another waiver of extradition form on July 3, 2000, which he refused to sign. Neither the record nor the parties' briefs indicate why Mr. Odhinn was asked to sign a second waiver after having waived extradition just two weeks before by signing IAD Form II.

[¶ 6] On July 10, 2000, officials in Nebraska informed Wyoming authorities that on July 5, 2000, Mr. Odhinn was sentenced to serve an additional one to two years in Nebraska on the escape charge and would not be available for release to Wyoming on July 16 after all. The record does not indicate and the parties offer no explanation as to why Mr. Odhinn was not available for release to Wyoming after being sentenced on the escape charge. From the record, it would appear that as of July 5, 2000, Mr. Odhinn had entered upon a term of imprisonment in Nebraska while charges upon which a detainer had been filed were pending in Wyoming, the very circumstances contemplated by the IAD for releasing him to Wyoming for disposition of the charges pending in this state.

[¶ 7] Mr. Odhinn remained in custody in Nebraska and four months later, on November 16, 2000, filed a grievance, asserting a violation of his right to final disposition of the Wyoming charges within 180 days. Nebraska responded to Mr. Odhinn's grievance by stating that when he requested final disposition of the Wyoming charges in June of 2000, his expected release date in Nebraska was not until July making his request inappropriate; he refused to sign a waiver of extradition in July of 2000, necessitating procurement of a warrant signed by the governor of Nebraska; and he was not sentenced on the escape charge in Nebraska until July of 2000, preventing trial in Wyoming at that time. By letter dated November 17, 2000, Nebraska advised the Albany County attorney of Mr. Odhinn's June request for final disposition of the Wyoming charges. The Albany County prosecutor received the letter on November 27, 2000, nearly six months after Mr. Odhinn's request. This letter was the first notice Wyoming had that Mr. Odhinn had formally requested speedy disposition of the Wyoming charges pursuant to the IAD.

[¶ 8] For the next several months, Mr. Odhinn remained incarcerated in Nebraska. On April 11, 2001, Nebraska advised Wyoming that Mr. Odhinn was scheduled to be released on May 16, 2001, but was refusing to sign a waiver of extradition to Wyoming. Despite Mr. Odhinn's June 6, 2000 waiver, Nebraska further advised that Wyoming would need to obtain a warrant from Nebraska's governor in order to secure his release.

[¶ 9] On May 15, 2001, Nebraska released Mr. Odhinn, but he was immediately taken into custody by the Lancaster County, Nebraska sheriff's office until Wyoming could obtain a governor's warrant. By letter to the Albany County circuit court dated June 3, 2001, Mr. Odhinn again requested dismissal of the Wyoming charges on the basis of speedy trial violations under the IAD and the Wyoming and United States Constitutions. In the letter, he specifically referenced his recent refusal to sign a waiver of extradition form, stating that his earlier signature on IAD Form II constituted a direct waiver of extradition to Wyoming making any additional waiver unnecessary.

[¶ 10] Meanwhile, despite Mr. Odhinn's letter stating he had already waived extradition, Wyoming authorities proceeded with obtaining a governor's warrant for his release. The governor of Nebraska signed the warrant on June 26, 2001, and sent it on to the Lancaster County, Nebraska sheriff's office

where it was received on June 29, 2001. Although no longer serving any sentence in Nebraska, Mr. Odhinn remained in custody in the Lancaster County jail throughout this time. At some point that is not identified by the parties and does not appear in the record, Mr. Odhinn filed a petition for writ of habeas corpus in the Lancaster County district court in which he again asserted a violation of his right to speedy trial in Wyoming.[2] The district court held a hearing on the motion on July 24, 2001, and, by order dated July 26, 2001, denied the petition, holding that the Nebraska courts had no jurisdiction to address whether Mr. Odhinn's speedy trial right was violated in Wyoming. The district court ordered the Lancaster County sheriff's office to deliver Mr. Odhinn to Wyoming authorities.

[¶ 11] On August 2, 2001, fourteen months after Mr. Odhinn's request for final disposition of the Wyoming charges, sheriff's deputies from Albany County, Wyoming arrived in Nebraska to take Mr. Odhinn into custody and return him to Wyoming for trial. They were informed Mr. Odhinn was scheduled for a hearing the next day and could not be released. At the hearing, the Nebraska district court stayed its order of July 26 and ordered Nebraska authorities to hold Mr. Odhinn until disposition of his appeal from the denial of his petition for writ of habeas corpus. At some point, the Nebraska Supreme Court dismissed the appeal and, on December 26, 2001, Nebraska notified Wyoming that Mr. Odhinn was available for release to Wyoming authorities. Officers were dispatched to Nebraska on December 27, 2001, and returned to Wyoming with Mr. Odhinn the following day, more than a year and a half after he requested final disposition of the Wyoming charges.

[¶ 12] On March 15, 2002, Mr. Odhinn filed a motion in district court in Albany County seeking dismissal of the Wyoming charges on the ground that his speedy trial rights were violated. The district court held an evidentiary hearing on the motion and, on April 24, 2002, issued a decision letter in which it concluded no violation occurred because: 1) the delay in bringing Mr. Odhinn to trial resulted from his refusal to sign the waiver of extradition in April of 2001 and filing a petition for writ of habeas corpus, and 2) Mr. Odhinn's "self-imposed delays" constituted good cause to continue the date for computing the 180 days from November 27, 2000 to December 26, 2001. The district court entered an order denying the motion to dismiss on April 29, 2002. Mr. Odhinn entered a guilty plea conditioned upon his right to appeal the denial of his motion to dismiss and, on October 3, 2002, the district court sentenced him to not less than three nor more than nine years in the state penitentiary. Mr. Odhinn then appealed from the order denying his motion to dismiss.

## STANDARD OF REVIEW

[¶ 13] To the extent the issue raised is a question of statutory interpretation, our review is de novo. *Wyodak Resources Development Corporation v. Wyoming Department of Revenue*, 2002 WY 181, ¶ 9, 60 P.3d 129, ¶ 9 (Wyo.2002). When a matter has been the subject of a bench trial (or evidentiary hearing) before the district court, we review the factual determinations under a clearly erroneous standard and the legal conclusions de novo. *Union Pacific Railroad v. Trona Valley Federal Credit Union*, 2002 WY 165, ¶ 7, 57 P.3d 1203, ¶ 7 (Wyo.2002).

[¶ 14] In construing statutes, our aim is to effectuate legislative intent. *Director of Office of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo.2003). If the language is sufficiently clear, we do not resort to rules of construction. *Id.* We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Id.* We also construe a statute so as to give effect to all of its provisions. *Id.*

[¶ 15] With regard to the IAD specifically, it is a federal law subject to

2. The date upon which the petition was filed is important because if Mr. Odhinn filed it prior to May 27, 2001, it would toll the 180 days from the date it was filed until its denial—a period which might well defeat Mr. Odhinn's claim. We cannot consider this issue, however, because the date the petition was filed does not appear in the record or the parties' briefs.

federal construction. *Knox v. Wyoming Department of Corrections State Penitentiary Warden*, 34 F.3d 964, 966 (10th Cir.1994). United States Supreme Court interpretations of the IAD are thus binding on state courts. *State v. Reed*, 2003 Neb. LEXIS 145. The IAD is a remedial statute and should be liberally construed to achieve its purposes, including a speedy trial and the expeditious and orderly disposition of charges. *Corbin v. Superior Court of the State of Arizona*, 155 Ariz. 365, 746 P.2d 937, 939 (1987). However, it also has strict procedural requirements that must be followed. *Id.*

## DISCUSSION

### 1. Right to speedy trial under the IAD

■ [¶ 16] Mr. Odhinn claims his right to speedy trial under the IAD was violated in that he was not brought to trial within 180 days of his request for final disposition as required. He asserts, and the state agrees, the time commenced to run on November 27, 2000, the date the Albany county prosecutor received his request for final disposition of the Wyoming charges. He claims Wyoming had until May 27, 2001, to bring him to trial. Given that he was not even returned to Wyoming until December 27, 2001, seven months after the asserted May 27, 2001 deadline, Mr. Odhinn claims the IAD was violated. The state argues the delay in bringing Mr. Odhinn to trial in Wyoming resulted from his actions in refusing to sign a waiver of extradition in April of 2001 and appealing the denial of his petition for writ of habeas corpus. The state asserts the district court properly held Mr. Odhinn was unable to stand trial in Wyoming during these periods and good cause existed for continuing the speedy trial date from November 27, 2000 to December 27, 2001.

■ [¶ 17] The IAD is a compact among forty-eight states, the federal government and the District of Columbia creating uniform procedures for lodging and executing detainers. *Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). Wyoming and Nebraska are participating states. Wyoming's version of the IAD is promulgated in Wyo. Stat. Ann. § 7–15–101 (LexisNexis 2003). The Act provides a uniform procedure whereby persons who are serving prison sentences in one state, and who are also charged with crimes in another state, can be tried for the pending charges while they are serving their current sentences. *Reed*, 2003 Neb. LEXIS 145. It is intended to provide for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State and seeks to minimize the consequent interruption of the prisoner's ongoing prison term. *Alabama*, 533 U.S. at 148, 121 S.Ct. 2079. As stated in Article I of the Act:

The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, *it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges* and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

Section 7–15–101 (emphasis added). Because the IAD is a congressionally sanctioned interstate compact, it is a federal law subject to federal construction. *Knox*, 34 F.3d at 966. United States Supreme Court interpretations of the Agreement are thus binding on state courts. *Reed*, 2003 Neb. LEXIS at 646. The Act itself requires that it "shall be liberally construed so as to effectuate its purposes." Section 7–15–101, Art. IX.

[¶ 18] The IAD contains two procedures for effectuating expeditious prosecution of charges filed in one state while a person is serving a sentence in another state. The first, contained in Article III, allows a prisoner against whom a detainer is lodged to initiate the process for disposition of charges outstanding in another state. The second, contained in Article IV, allows the authorities in the state where the charges are pending to initiate the process for returning a prisoner to that state for trial. In this case, Mr.

Odhinn initiated the process for final disposition of the Wyoming charges by signing IAD Form II. Therefore, our review focuses on the Article III procedure.

[¶ 19] Article III of the Wyoming IAD provides in relevant part as follows:

## Article III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial* **at the next term of court** *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition* to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary and reasonable continuance....

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to *the warden, commissioner of corrections or other official having custody of him,* who *shall* **promptly forward** *it* together with the certificate *to the appropriate prosecuting official and court* by registered or certified mail.

...

(e) *Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be* **deemed to be a waiver of extradition** *with respect to any charge or proceeding contemplated thereby* .... The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purpose of this agreement....

Section 7–15–101 (emphasis added). We have previously noted that Article III of Wyoming's statutory provision is identical to the federal act in all but one respect—Article III(a) of the Wyoming statute requires final disposition "at the next term of court" after delivery of the defendant's request. *Green v. State,* 784 P.2d 1360, 1362 (Wyo.1989). The federal act and the statutes of all other party states require disposition "within 180 days" after delivery of the request. 18 U.S.C. Appx. Faced with this difference in *Green,* we applied the federal 180–day requirement. We do so again now in order to effectuate the Act's intent to provide uniform procedures and comport our decision with controlling federal law.

[¶ 20] As noted earlier in this opinion, the parties agreed the 180–day period began to run on November 27, 2000, the date Mr. Odhinn's request for final disposition of the Wyoming charges was delivered to authorities in Albany County. In *Fex v. Michigan,* 507 U.S. 43, 53, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), the Court held the 180 days provided for in the IAD did not commence until the prisoner's request for final disposition was delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him. Thus, the parties are correct that November 27, 2000 is the appropriate date from which to begin the 180 days. One hundred and eighty days from November 27, 2000 is May 26, 2001. Given that Mr. Odhinn was not returned to Wyoming until December 26, 2001, seven months later, the charges against him clearly were not finally disposed of within 180 days. We must decide whether, under the facts presented, other provisions of the Act support the district court's determination that the IAD was not violated. Before focusing on that question, however, we address another concern touched on only briefly by Mr. Odhinn.

[¶ 21] Article III(b) of the IAD requires the official having custody of the prisoner to "promptly" forward the prisoner's request for final disposition to the appropriate prosecuting official and court. Pursuant to this provision, Nebraska was required to promptly forward Mr. Odhinn's request to the Albany County court and prosecutor.

The word "prompt" means "1: ready and quick to act as occasion demands: responding instantly 2: performed readily or immediately: given without delay or hesitation. (Websters New International Dictionary, (3d ed.1961)). Here, nearly six months passed after Mr. Odhinn signed the request and before Albany County officials received it. As we noted earlier, the reason for the lengthy delay is not apparent from the record or the parties' briefs. Although Nebraska claimed later in responding to Mr. Odhinn's grievance that his June 2000 request was not appropriate due to his July release date, he refused to sign a second waiver of extradition and he was not sentenced on the escape charge until July of 2000, none of these claims have any bearing on Nebraska's obligation to promptly forward Mr. Odhinn's request. They also provide no explanation as to why his request still was not forwarded in the months following July. Nebraska had an unequivocal obligation to promptly notify Albany County of Mr. Odhinn's request and for reasons largely left unexplained failed to do so.

[¶ 22] One legal analyst has addressed the consequences of a custodian's failure to comply with the prompt notification provision as follows:

> What are the consequences of a less than prompt delivery of the inmate's request for final disposition by the custodian to the prosecutor? Some courts have held that an inmate has only one obligation under the IAD—to advise the custodian in writing of the request for final disposition of the charges. If an inmate satisfies that requirement, he is entitled to the benefits of the IAD. After all, the inmate has no power of supervision over prison officials. If the delay does not meet the language of the IAD, the inmate is entitled to dismissal of the charge without having to show prejudice or misconduct if the initial trial date is not within 180 days of the request to the warden for final disposition. [*People v. Wilson,* 69 Cal.App.3d 631, 138 Cal.Rptr. 259, 262 (1977) ]

> Why should the prosecuting officials of the charging state bear the brunt of another jurisdiction's failure to comply with

IAD? The answer seems to be that, as between the prosecutor and the inmate, the prosecutor is "better situated than the inmate to see that the requirements of the law are met." [*Wilson,* 138 Cal.Rptr. at 262] A prisoner should not be penalized if the prison officials fail to carry out their duties under the IAD. [*People v. Marshall,* 170 Mich.App. 269, 428 N.W.2d 39, 42 (1989) ]

L. Abramson, *The Interstate Agreement on Detainers: Narrowing its Availability and Application,* 21 New England Journal on Criminal and Civil Confinement 1 (1995), 22. Based upon this reasoning, the court in *Wilson* remanded the case for hearing to permit the state to show the reasonableness of a two-month delay between the prisoner's request and receipt of his request by the receiving state. *Wilson,* 138 Cal.Rptr. at 262. Other courts likewise have imposed the burden on the custodial official, rather than the inmate, to ensure compliance with the provision of the Act requiring prompt notification of the charging state. *Pittman v. State,* 301 A.2d 509 (Del.1973); *People v. Esposito,* 37 Misc.2d 386, 201 N.Y.S.2d 83 (1960); *Rockmore v. State,* 21 Ariz.App. 388, 519 P.2d 877 (1974); *Burns v. State,* 578 S.W.2d 650 (Tenn.1978).

[¶ 23] We are aware that other courts have held the custodial official's failure to comply with the prompt notification provision is not grounds for dismissing charges pending in another state. *Welch v. State,* 528 So.2d 1236 (Fla.Ct.App.1988); *Parrott v. State,* 206 Ga.App. 829, 427 S.E.2d 276 (1992); *State v. Moore,* 774 S.W.2d 590 (Tenn.1989). However, the effect of adopting the position of these courts would be to leave Mr. Odhinn in a "catch–22". His petition for writ of habeas corpus was denied in Nebraska on the ground that Nebraska courts had no jurisdiction to address whether Wyoming violated Mr. Odhinn's speedy trial right. A holding by Wyoming that Nebraska's failure to comply with the IAD does not affect the Wyoming charges is tantamount to holding we have no jurisdiction to address whether Nebraska violated his speedy trial right. This leaves Mr. Odhinn with no remedy for what we view as a clear failure on the part of officials to carry out the intent of the IAD.

We conclude Mr. Odhinn's request was not promptly forwarded as required by the IAD. However, because the request was forwarded within the 180 day time period, we conclude that failure alone is insufficient to warrant dismissal of the Wyoming charges. We turn to the issue of whether Mr. Odhinn's rights were violated because the charges were not disposed of within 180 days.

[¶ 24] Article VI of the IAD provides:

## Article VI

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, *the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial,* as determined by the court having jurisdiction of the matter.

Section 7–15–101 (emphasis added).

Pursuant to this provision, we must determine whether the time period was tolled because Mr. Odhinn was "unable to stand trial" within the meaning of Article VI for any period after November 27, 2000.

[¶ 25] We have said periods in which a defendant is detained for trial in another jurisdiction toll the time for determining the number of days between his request and trial. *Green,* 784 P.2d at 1363. Thus, in *Green,* we held a delay of 236 days between the defendant's request for final disposition and trial did not constitute a speedy trial violation given that he was unavailable for trial for 133 of those days while preparing for and standing trial in another jurisdiction. We also have held the time period is tolled when a defendant challenges for cause the judge assigned to the case and files multiple motions. *Jones v. State,* 813 P.2d 629, 632 (Wyo.1991). In *Jones,* we concluded the defendant was unable to stand trial and the time limit was tolled for almost three months as a result of the challenge for cause and other defense motions. Other courts have likewise construed the phrase "unable to

stand trial" in the IAD to include periods in which the defendant was facing pending charges in another state, *Reed,* 2003 Neb. LEXIS 655; *United States v. Roy,* 830 F.2d 628, 633 (7th Cir.1987); *Ohio v. Ferguson,* 41 Ohio App.3d 306, 535 N.E.2d 708, 714 (1987); *State v. Walton,* 734 S.W.2d 502, 503 (Mo. 1987); *Iowa v. Wood,* 241 N.W.2d 8, 14 (Iowa 1976), or defense motions were pending. *United States v. Nesbitt,* 852 F.2d 1502, 1516 (7th Cir.1988); *State v. Bernson,* 106 Or.App. 252, 807 P.2d 309 (1991); *State v. Millett,* 272 N.J.Super. 68, 639 A.2d 352 (1994).

[¶ 26] In the present case, the district court concluded Mr. Odhinn was unable to stand trial from April 11, 2001, when Nebraska officials asked him a third time to sign a waiver of extradition and he refused, until July 2, 2001, the date the governor's warrant allegedly necessitated by his refusal was received in Lancaster County where he was being held. The district court also concluded Mr. Odhinn was unable to stand trial from August 3, 2001, the date Nebraska refused to allow Wyoming authorities to take custody of Mr. Odhinn because of a pending hearing, to December 26, 2001,[3] when Nebraska notified Albany County Mr. Odhinn's appeal had been dismissed by the Nebraska Supreme Court. We address these time periods sequentially.

[¶ 27] In ruling the Article III time period was tolled from April 11, 2001 to July 2, 2001, the district court relied on *People v. Garner,* 224 Cal.App.3d 1363, 274 Cal.Rptr. 298 (1990) and *People v. Uplinger,* 69 Ill.2d 181, 13 Ill.Dec. 27, 370 N.E.2d 1054 (1977). The latter decision is distinguishable and not helpful to our resolution of the issue in the present case. Unlike Mr. Odhinn, the defendant in *Uplinger* did not make a request for final disposition and thereby waive extradition as provided in Article III of the IAD. Therefore, his later refusal to sign a waiver of extradition "manifested the clear intent to prevent his return for trial in Illinois." There was no question, as there was in Mr. Odhinn's case, of the effect of a subsequent refusal to waive extradition on an earlier waiver. *Id.* at 1058. However, *Garner,* 224

---

**3.** The district court's decision letter states "November 26, 2001." That date has no significance in the record and we assume the district court

meant to say "December 26, 2001"—the date Nebraska officials informed Wyoming Mr. Odhinn's appeal was dismissed.

Cal.App.3d 1363, 274 Cal.Rptr. 298, the other case relied on by the district court, is directly on point. Mr. Garner signed the IAD forms requesting final disposition of charges filed against him in San Diego, California and waiving extradition. Some months later, when he was available to stand trial on the California charges, Nevada authorities where he was being held presented him with a second waiver of extradition, which Mr. Garner refused to sign. The California court stated:

Here, the Nevada authorities allowed Garner to either reaffirm his request for disposition of the San Diego detainer or withdraw his request and waiver of extradition. Garner chose not to reaffirm his request and to withdraw his waiver of extradition. By refusing to reaffirm his waiver, Garner then made himself unavailable for transfer to San Diego. Garner, not California or Nevada officials, caused the delay. Under these circumstances, the 180–day period was tolled until Garner consented to extradition and again sought final disposition of the San Diego charges.

*Id.* at 304.

■ [¶ 28] The district court was persuaded that Mr. Odhinn's refusal to sign the waiver in April of 2001 warranted tolling the 180 days. We disagree. Pursuant to the clear language of Article III(e), Mr. Odhinn's request for final disposition of the charges pending in Wyoming constituted a "waiver of extradition" and "consent to the production of his body" in court in Albany County, Wyoming. Once Mr. Odhinn signed the form on June 2, 2000, no other waiver was necessary. To say that a prisoner can circumvent his extradition to another state by refusing to sign a waiver after he has already waived extradition renders meaningless the clause in Article III(e) stating the request for final disposition is deemed to be a waiver. We think the better rule is stated in *Franks v. Johnson*, 401 F.Supp. 669, 672 (E.D.Mich. 1975), wherein the court held the prisoner's refusal to sign a waiver after requesting final disposition of charges was without effect because, under the IAD, the request is deemed to be a waiver. See also *Tungate v. Thoms*, 199 F.Supp.2d 608 (E.D.Ky.2002) where, af-

ter signing a request for final disposition, the defendant denied waiving extradition and the court upheld as effective and continuing the language of the request stating that it was "deemed to be a waiver of extradition."

[¶ 29] With regard to the waiver issue, we also reiterate that the prosecutor is in a better position than the prisoner to see that the requirements of the law are met. Here, when Mr. Odhinn was presented with the third waiver on April 11, 2001, officials in Wyoming and Nebraska already had the request for final disposition of the Wyoming charges signed by Mr. Odhinn on June 6, 2000. That document clearly states "I ... agree that this request shall be deemed to be my waiver of extradition with respect to the [Wyoming charges]." We simply are not willing to say that Mr. Odhinn's refusal to sign a form presented to him unnecessarily by Nebraska officials excuses the party states from complying with the 180 day time period. The IAD contains no provision requiring an inmate to "reaffirm" an already effective waiver and we are not willing to read such a requirement into the Act. The district court incorrectly held the 180–day period was tolled from April 11, 2001, until the governor's warrant was received eighty-three days later on July 2, 2001. Adding this period of time back into the calculation, the 180 days ended May 27, 2001, seven months before Mr. Odhinn was returned to Wyoming for trial.

■ [¶ 30] The dissent cites several cases for the proposition that the IAD's speedy trial provision did not apply to Mr. Odhinn on May 27, 2002, when the 180 days expired because he was released by Nebraska authorities on May 15, 2001. We note first that none of those cases involved a situation where, like here, despite his request for speedy disposition the defendant thereafter remained incarcerated in the sending state for another twelve months until his sentence was completed. Additionally, Mr. Odhinn was never really "released" because Nebraska authorities immediately took him into custody and held him for another seven months while Wyoming sought the governor's warrant and his habeas petition was resolved. Moreover, § 7–15–101(a) applies

"whenever a person has entered upon a term of imprisonment ... and during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner." Mr. Odhinn had entered upon a term of imprisonment in Nebraska and during the continuance of that term an untried information was pending in Wyoming on the basis of which a detainer was lodged in Nebraska. Giving the statutory language its plain and ordinary meaning, we are persuaded the IAD applied even though Mr. Odhinn's sentence in Nebraska ended on May 15, 2001. Accord *Commonwealth v. Davis*, 2000 PA Super 217, 757 A.2d 959, 962 (2000).

[¶ 31] Having concluded that the 180 days expired on May 27, 2001, the question of whether the 180 days was tolled by Mr. Odhinn's later appeal of the denial of his petition for writ of habeas corpus is irrelevant. We are left to consider one final issue arising from the district court's order. Even under the district court's calculation, excluding the time periods from April 11, 2001 to July 2, 2001 and August 3, 2001 to December 26, 2001, Mr. Odhinn was not returned to Wyoming within 180 days. Faced with this result, the district court looked to the language of Article III stating: "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Section 7–15–101(a). Citing this provision, the district court held Mr. Odhinn's "self-imposed delays provide this Court the grounds with which to grant a necessary and reasonable continuance in this matter to December 26, 2001, the date that [he] was finally made available to the [Albany County sheriff's office] for transport to Wyoming." The district court thus brought final disposition of the charges against Mr. Odhinn back within the 180 days in which trial was to occur under the IAD.

[¶ 32] The difficulty with the district court's approach is that the self-imposed delays referred to as support for a retroactive continuance, i.e., Mr. Odhinn's refusal to sign a second waiver of extradition and filing a petition for writ of habeas corpus, were accounted for already by the district court in computing the IAD time period. That is, they were factored in as periods during which Mr. Odhinn was "unable to stand trial", thereby tolling the 180–day period. To factor them in a second time as a basis for granting a court initiated, retroactive continuance gives us pause.

[¶ 33] Another difficulty with the district court's approach is that it is contrary to the rule adopted by several courts that a continuance of a defendant's trial must be requested and granted before the 180 days expires. *State v. Willoughby*, 83 Hawai'i 496, 927 P.2d 1379, 1387 (Ct.App.1996) (calling this the "majority rule"); *Dennett v. State*, 19 Md. App. 376, 311 A.2d 437, 440 (Ct. Spec.App.1973); *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605, 607 (1973); *State v. Patterson*, 273 S.C. 361, 256 S.E.2d 417, 418 (1979). The United States Supreme Court expressly declined to address this rule in *Fex v. Michigan*, 507 U.S. 43, fn. 5, 113 S.Ct. 1085, 122 L.Ed.2d 406, and there is at least one case upholding the grant of a continuance after expiration of the 180 days on the ground that the language of the IAD does not expressly state any continuance must be granted before the time expires. *State v. Lippolis*, 107 N.J.Super. 137, 257 A.2d 705, 711 (1970) (per curiam) (reversing on reasoning of dissent in Appellate Division). However, most courts that have addressed the issue have concluded continuances under the IAD must be granted prior to expiration of 180 days. They have done so in order to promote the IAD's express purpose to "encourage the expeditious and orderly disposition" of charges pending in one state against a person incarcerated in another state. *Willoughby*, 927 P.2d at 1387; *State v. Patterson*, 256 S.E.2d at 418; *Fisher*, 301 A.2d at 607. Particularly under the facts presented here—where Mr. Odhinn requested final disposition and waived extradition months before he was returned to Wyoming, Nebraska was aware of his request and waiver and yet sought additional waivers and advised Wyoming to obtain a governor's warrant, and months went by when authorities apparently took no action to comply with the IAD—we cannot agree that good cause exist-

ed to grant a continuance nearly a year after the 180 days had passed. We reverse the district court order and remand for entry of an order granting Mr. Odhinn's motion to dismiss.

[¶ 34] We do not reach this result easily. Dismissal of charges pending in Wyoming is not a desirable outcome. However, the clear intent of the IAD leaves us no reasonable alternative. In light of our holding that Mr. Odhinn's right to speedy trial under the IAD was violated, it is not necessary to address Mr. Odhinn's constitutional claim.

[¶ 35] Reversed.

GOLDEN, Justice, dissenting.

[¶ 36] I respectfully dissent. The 180–day speedy trial period under the Interstate Agreement on Detainers (IAD) was to expire on May 26, 2001. Nebraska released Odhinn from imprisonment, however, on May 15, 2001, before expiration of the 180–day speedy trial period. The "majority rule," acknowledged by Odhinn's appellate defense counsel, holds that if the sending state (Nebraska) releases the accused (Odhinn) within the 180–day period, then the accused (Odhinn) is, under the plain language of the IAD, no longer a "prisoner" to whom the IAD provi-

sions apply; therefore, the IAD's speedy trial provision no longer applied to the released Odhinn. *See, e.g., United States v. Roy,* 830 F.2d 628, 633 (7th Cir.1987); *Cunningham v. State,* 341 Ark. 99, 14 S.W.3d 869, 871–72 (2000); *Womble v. State,* 957 S.W.2d 839, 843–44 (Tenn.Cr.App.1997); *State v. Holley,* 82 Md.App. 381, 571 A.2d 892, 894–96 (App. 1990); *State v. Julian,* 244 Kan. 101, 765 P.2d 1104, 1106–08 (1988); and *State v. Tarango,* 105 N.M. 592, 734 P.2d 1275, 1278 (App.1987).

[¶ 37] Addressing Odhinn's garden-variety constitutional speedy trial claim, I agree with the State's position that Odhinn failed to raise that issue below, and it is deemed waived. Even on the merits, the claim fails because Wyoming received Odhinn on December 28, 2001, and he entered a conditional guilty plea on June 4, 2002. That period between those two dates fails to trigger a speedy trial claim analysis.