2007 WY 1

**James Walter LAYTON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–152.

Supreme Court of Wyoming.

Jan. 9, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Faculty Director, Jonathan Haidsiak, Student Director, and Rickey D. Turner, Jr., Student Intern, of the Prosecution Assistance Program. Argument by Mr. Turner.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant James Walter Layton appeals from the judgment and sentence entered after a jury found him guilty of five felonies. Layton seeks to have his convictions reversed based on a claimed violation of the Interstate Agreement on Detainers. Layton also challenges the validity of the district court's order requiring him to pay restitution for a stolen jeep and the personal property that was inside the jeep. We affirm.

## ISSUES

[¶ 2] Layton presents the following issues for our review:

I. Whether all charges should have been dismissed under the Interstate Agreement on Detainers.

II. Whether the district court erroneously ordered restitution for the stolen vehicle which was recovered and the items within the vehicle which Appellant was never charged, nor admitted to, stealing.

## FACTS

[¶ 3] Around midnight on August 11, 2003, Highway Patrol Trooper Theodore Bair encountered Layton at Fremont Toyota in Lander, Wyoming, as Layton was trying to steal a Pontiac Firebird. The two men fought as Trooper Bair tried to apprehend Layton, but Layton managed to escape and flee. Layton then stole a Jeep Grand Cherokee that was parked in front of a nearby trailer house and drove it to Davenport, Iowa, where he disposed of the vehicle.

[¶ 4] On August 25, 2003, the State of Wyoming charged Layton with four felonies arising out of the incident at Fremont Toyo-

---

* Chief Justice at time of oral argument

ta: (1) burglary based on Layton's unlawful entry into the Pontiac Firebird with the intent to commit a larceny, a violation of Wyo. Stat. Ann. § 6–3–301(a) and (b) (LexisNexis 2005); (2) attempted larceny of the Pontiac Firebird, a violation of Wyo. Stat. Ann. § 6–3–402(a) and (c)(i) (LexisNexis 2003);[1] (3) property destruction based on Layton's breaking of one of the Firebird's windows in order to gain entrance into the vehicle and steal it, a violation of Wyo. Stat. Ann. § 6–3–201(a) and (b)(iii) (LexisNexis 2003); and (4) attempted first degree murder of Trooper Bair, a violation of Wyo. Stat. Ann. §§ 6–2–101(a), 6–1–301 and 6–1–304 (LexisNexis 2005). The murder charge was accompanied by a habitual criminal enhancement pursuant to Wyo. Stat. Ann. § 6–10–201(a)(ii) and (b)(ii) (LexisNexis 2005).

[¶ 5] By the time the State located Layton he was serving a prison sentence in an Oregon penitentiary. The State filed a detainer[2] against him for the pending criminal charges. Layton eventually requested final disposition of the Wyoming charges under Article III(a) of the Interstate Agreement on Detainers ("IAD"). On January 14, 2004, the State accepted temporary custody of Layton under the IAD for the purpose of prosecuting him on the pending charges.

[¶ 6] Before a preliminary hearing was held on the charges,[3] the State filed an amended information that contained eight criminal charges. The amended information enhanced the original burglary count to aggravated burglary as defined by Wyo. Stat. Ann. § 6–3–301(c)(ii) (LexisNexis 2005) (Count 1), and included the felony larceny and felony property destruction counts that were contained in the original information (Counts 2 and 3). It also charged Layton with five additional counts: robbery based on the attempted larceny of the Firebird and

the bodily injuries inflicted on Trooper Bair (Count 4), a violation of Wyo. Stat. Ann. § 6–2–401(a)(i) and (b) (LexisNexis 2005); attempted interference with a peace officer based on Layton's efforts to take Trooper Bair's firearm during their fight (Count 5), a violation of Wyo. Stat. Ann. §§ 6–1–301 and 6–5–204(c) (LexisNexis 2005); burglary based on Layton's unlawful entry into the Jeep Cherokee with the intent to steal the vehicle (Count 6), a violation of Wyo. Stat. Ann. § 6–3–301(a) and (b) (LexisNexis 2005); felony larceny for the theft of the Jeep Cherokee (Count 7), a violation of Wyo. Stat. Ann. § 6–3–402(a) and (c)(i) (LexisNexis 2003); and wrongful taking or disposing of property based on Layton's disposing of the Jeep in Iowa (Count 8), a violation of Wyo. Stat. Ann. § 6–3–403(a)(i) (LexisNexis 2003). The charges of aggravated burglary and robbery (Counts 1 and 4) were accompanied by a habitual criminal enhancement under Wyo. Stat. Ann. § 6–10–201(a)(ii) and (b)(ii) (LexisNexis 2005). Layton ultimately waived his preliminary hearing on the charges and was bound over to district court. Layton appeared for arraignment on May 26, 2004, and the district court set his trial date for October 12, 2004.

[¶ 7] On September 9, 2004, Layton filed a motion to dismiss the criminal charges with prejudice, claiming a violation of his speedy trial and due process rights under the IAD. After a hearing on the motion, the district court dismissed with prejudice Counts 1, 2, and 3 of the amended information because of a violation of the 180–day speedy trial requirement of the IAD but declined to dismiss the remaining counts.[4] In its ruling, the district court drew a distinction between the charges upon which the State's detainer was lodged and for which Layton was returned to Wyoming to stand trial (Counts 1 through 3, hereinafter "detainer charges") and those

---

1. In some instances, we refer to the 2003 version of the applicable statutes because the statutes were amended in 2004.

2. A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Odhinn v. State,* 2003 WY 169, ¶ 4 n. 1, 82 P.3d 715, 717 n. 1 (Wyo.2003) (quoting *Cuyler v. Adams,* 449 U.S.

433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)) (quotation marks omitted).

3. The circuit court granted three continuances of the preliminary hearing at Layton's request.

4. The court determined that Layton had been in custody for 254 days and found no basis for tolling enough time to reduce the period back to 180 days.

which were not the subject of that detainer (Counts 4 through 8, hereinafter "non-detainer charges").[5] Relying on *United States v. Sanders*, 669 F.2d 609 (9th Cir.1982), and *Espinoza v. State*, 949 S.W.2d 10 (Tex.App. Ct.1997), the district court ruled that the 180–day time limit imposed by the IAD was inapplicable to the non-detainer charges.

[¶ 8] Layton's trial commenced as scheduled on October 12, 2004. After a two-day trial, the jury found Layton guilty on all five counts.[6] The district court sentenced Layton to a combined prison term of not less than twenty-two and one-half (22½) years and not more than twenty-five (25) years, to be served consecutive to his Oregon sentence, and ordered him to pay restitution in the amount of $24,902.80. This appeal followed.

## DISCUSSION

### *Interstate Agreement on Detainers*

[¶ 9] Layton claims the district court erred in holding that the 180–day time limit provided by Article III of the IAD was not applicable to the non-detainer charges, Counts 4 through 8. Layton contends that the provision applies to those offenses because they arose out of the same criminal transaction as the original criminal charges referenced by the State's detainer.[7] In this regard, Layton places significance on the fact that both the detainer and non-detainer charges were incorporated in the same charging document. Layton's claim is best described as an argument for a generous interpretation of the 180–day rule and the dismissal provision of the IAD. We reject Layton's argument.

[¶ 10] The question whether the district court erred in its determination that the IAD does not apply to the non-detainer

charges is a question of statutory construction, which we review *de novo*. *Odhinn v. State*, 2003 WY 169, ¶ 13, 82 P.3d 715, 719 (Wyo.2003). We recently stated:

> In construing statutes, our aim is to effectuate legislative intent. *Director of Office of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo.2003). If the language is sufficiently clear, we do not resort to rules of construction. *Id.* We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Id.* We also construe a statute so as to give effect to all of its provisions. *Id.*

*Odhinn*, ¶ 14, 82 P.3d at 719.

[¶ 11] The IAD is a congressionally sanctioned compact among forty-eight states. *Id.*, ¶ 17, 82 P.3d at 720 (citing *Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001)). The IAD provides an expeditious, simplified method of orderly disposition of charges pending in one state against a person imprisoned in another state. *Id.* Wyoming's version of the IAD is contained in Wyo. Stat. Ann. § 7–15–101 (LexisNexis 2005), and states in relevant part:

### Article III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial at the next term of court [8] after he shall have caused to be deliv-

---

5. The district court found that Counts 1 through 3 were derived from, if not identical to, three of the charges included in the original information, and that Counts 4–8 were entirely new and distinct charges.

6. The State dismissed the habitual criminal enhancements on Counts 1 and 4 after the jury returned its verdict.

7. Layton also claims that the non-detainer offenses are the same as those dismissed by the

district court pursuant to the IAD. Layton, however, provides no legal analysis to support this claim. Consequently, we will not consider it further. *See Marshall v. State*, 2005 WY 164, ¶ 12, 125 P.3d 269, 274 (Wyo.2005) (this Court will not consider claims unsupported by cogent argument and citation to legal authority).

8. Although the statute states that final disposition is required "at the next term of court," this Court applies the federal requirement of 180 days. *Odhinn*, ¶ 19, 82 P.3d at 721.

ered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance....

\* \* \* \*

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed....

\* \* \* \*

Article V

\* \* \* \*

(c) ... [I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the periods provided by this act, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one (1) or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

[¶ 12] It is clear from the language of § 7–15–101 that its speedy trial provisions apply exclusively to "untried indictments, informations or complaints *on the basis of*

*which detainers have been lodged against the prisoner.*" By its terms, the 180–day time period, and thus the dismissal requirement, is limited to pending charges upon which the detainer is based. There is nothing in the language of § 7–15–101 which mandates dismissal of non-detainer charges after 180 days, including those charges arising out of the same criminal transaction as the charges forming the basis for the detainer. Our review of § 7–15–101, coupled with decisions from other courts interpreting similar IAD provisions, convinces us that neither the 180–day time period in Article III(a) nor the dismissal provision in Article V(c) applies to non-detainer same transaction offenses, as Layton claims. *See United States v. Sanders*, 669 F.2d 609, 610 (9th Cir.1982) (180–day time limit of IAD applies only to charges pending at the time the detainer is filed); *Morrison v. State*, 272 Ga.App. 34, 611 S.E.2d 720, 723–24 (2005) (speedy trial provision of IAD inapplicable to non-detainer charges); *State v. Taylor*, 63 Conn.App. 386, 776 A.2d 1154, 1174–75 (2001) (IAD not applicable to non-detainer charges); *State v. Crawford*, 169 Vt. 371, 737 A.2d 366, 368–69 (1999) (IAD does not preclude prosecution for non-detainer charges arising out of the same criminal conduct); *People v. Newton*, 764 P.2d 1182, 1189–90 (Colo.1988) (speedy trial provision of IAD does not require dismissal of non-detainer charges); *Espinoza v. State*, 949 S.W.2d 10, 12–13 (Tex.App.1997) (neither 180–day rule nor dismissal provision of IAD applies to non-detainer same transaction charges); *Commonwealth v. Boyd*, 451 Pa.Super. 404, 679 A.2d 1284, 1288–89 (1996) (non-detainer charges not subject to dismissal under 180–day rule of IAD).

[¶ 13] In this case, the detainer lodged against Layton concerned the offenses charged in the original felony information and retained in the amended information. The charges upon which Layton was ultimately convicted, Counts 4 through 8, were filed after he requested final disposition of the initial charges under Article III(a) and was transferred to Wyoming to stand trial.[9] Since Counts 4 through 8 were not charges

---

**9.** We find no significance in the fact that both the new and the old charges were incorporated in the same charging document, rather than separate documents.

which "formed the basis for the detainer," the 180–day time limit of the Article III(a) was not implicated. Consequently, the district court did not err in refusing to dismiss those charges.

### Restitution

[¶ 14] The district court ordered Layton to pay $24,902.80 in restitution, which included $22,477.00 to the owner's insurance company for the stolen Jeep Grand Cherokee and $395.00 to the owner for the personal items that were inside the Jeep at the time it was stolen. Layton attacks the district court's restitution order on two grounds. First, Layton argues that the district court erred in requiring him to pay the full amount of the loss incurred by the insurance company because the insurance company sold the Jeep for salvage value after recovering the vehicle in Iowa.[10] Layton contends that the restitution order should be reduced by the salvage amount received by the insurance company. Second, Layton argues that the district court erred in ordering him to pay restitution for the personal items inside the Jeep. Relying on *Van Riper v. State*, 999 P.2d 646 (Wyo.2000), Layton contends that the district court had no authority to award restitution for the personal items because he neither admitted to nor was found guilty of stealing those items.

[¶ 15] Layton's first argument concerns a factual challenge to the total amount of restitution awarded on the Jeep. Layton did not challenge the factual basis for the restitution order in the district court and, consequently, we will review his claim only for plain error. *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1048 (Wyo.2003). Plain error exists when the record clearly shows an error that transgressed a clear and unequivocal rule of law in an obvious way resulting in a denial of a substantial right and material prejudice. *Nixon v. State*, 4 P.3d 864, 871 (Wyo.2000); *Merkison v. State*,

996 P.2d 1138, 1142 (Wyo.2000). Layton's second argument involves the district court's authority to make an award of restitution. This claim presents a question of law, which we review *de novo*. *Penner*, ¶ 7, 78 P.3d at 1048; *Merkison*, 996 P.2d at 1141.

[¶ 16] Layton's complaint regarding the amount of restitution awarded on the Jeep turns on whether the insurance company actually sold the vehicle at salvage value. The only reference in the record to such a sale, upon which Layton's entire claim is based, is an offhand remark by the vehicle's owner during her trial testimony. During direct examination, the prosecutor asked the victim, "So what happened with your Jeep?" The victim answered, "to my knowledge, they have since probably sold it for salvage value." In our view, the victim's answer is, at best, mere speculation as to what happened to the Jeep after it was found in Iowa. There is no clear evidence in the record that the insurance company in fact sold the Jeep for salvage value. Consequently, we have no evidentiary basis upon which we can conclude that the district court's restitution order is erroneous as a matter of law.

[¶ 17] We also find no merit in Layton's contention that the district court exceeded its authority in ordering restitution for the personal items in the Jeep. A trial court's authority to order restitution from a criminal defendant is detailed by Wyo. Stat. Ann. § 7–9–103 (LexisNexis 2005), which reads in relevant part:

> (b) In every case in which a claim for restitution is submitted, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment and conviction....

"Criminal activity" is defined as "any crime for which there is a ... verdict of guilty upon

---

10. The insurance company paid $3,592.78 to the owner and $18,884.22 to the owner's bank to cover the balance of the loan on the Jeep. The district court's oral pronouncement at sentencing is somewhat ambiguous as to whether the owner or the insurance company should be reimbursed. However, the judgment and sentence specified

that Layton was to reimburse the insurance company for its loss. On appeal, Layton does not contest the amount paid by the insurance company nor does he question the insurance company's status as a "victim" for purposes of the restitution award. *See* Wyo. Stat. Ann. § 7–9–101(a)(v) (LexisNexis 2005).

which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted." Wyo. Stat. Ann. § 7–9–101(a)(i) (LexisNexis 2005).

[¶ 18] In *Van Riper*, we reversed a restitution award arising out of criminal activity for which the defendant neither admitted nor was convicted. In that case, Van Riper was charged with one count of escape from official detention, four counts of burglary, three counts of larceny and one count of property destruction. Two of the larceny counts concerned the theft of a pickup truck and the personal property that was inside the truck. Following a preliminary hearing, four of the counts were dismissed, including the count charging him with larceny of the personal property. He later pled guilty to escape and one count of burglarizing an aviation hangar, and the remaining charges, including the theft of the pickup, were dismissed. The trial court ordered Van Riper to pay restitution not only for the property taken from the hangar but also for the personal property taken from the pickup although Van Riper denied taking the property and the counts charging him with larceny of the pickup and the personal items were dismissed. *Van Riper*, 999 P.2d at 647–48. Under the facts of that case, we held that the trial court lacked authority to order restitution for the value of the personal property. *Id.* at 648.

[¶ 19] The facts of this case are distinguishable from *Van Riper*. In that case, Van Riper's convictions on burglary and theft charges involving the aviation hangar gave the trial court no basis for concluding he had stolen property from a vehicle that he neither admitted taking or been convicted of taking. Here, on the other hand, Layton admitted to stealing the Jeep and a jury convicted him of felony larceny for taking the Jeep. When Layton stole the Jeep, he stole the items that were contained therein. Thus, in this case, there is a direct relationship between the claimed loss and the criminal conduct. Further, unlike Van Riper, Layton never denied taking the personal property and, at sentencing, never contested the restitution requested on the stolen items. Under the circumstances, we have no trouble concluding that the value of the personal property located in the Jeep was part of the damages resulting from Layton's criminal activity. Wyo. Stat. Ann. § 7–9–103(b). We hold that the district court acted within its authority in awarding restitution for the personal items inside the Jeep.

## CONCLUSION

[¶ 20] The judgment and sentence of the district court is affirmed in all respects.