2009 WY 52

**Douglas Anthony SHORT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Respondent).**

No. S–08–0014.

Supreme Court of Wyoming.

April 13, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant seeks review of the district court's denial of his motion to dismiss based on the State's alleged violation of his rights under the Interstate Agreement on Detainers (IAD). We affirm, although for different reasons than those relied upon by the district court.

## ISSUE

[¶ 2] Should the district court have dismissed with prejudice the Felony Informa-

tion because the appellant was not brought to trial within the period provided by the IAD?

## FACTS

[¶ 3] A convenience store in Campbell County, Wyoming, was robbed at gunpoint on July 11, 2005. After an ensuing investigation, a Felony Information was filed charging the appellant with aggravated robbery and with conspiring to commit aggravated robbery. An arrest warrant was filed on May 1, 2006.

[¶ 4] On May 23, 2006, the appellant was arrested on drug charges in Weld County, Colorado. The Colorado authorities initiated a National Crime Information Computer check and discovered the Wyoming arrest warrant. Although the record is not clear in this regard, it appears that the appellant initially refused to waive extradition to Wyoming, because the Wyoming prosecutor subsequently obtained a governor's warrant pursuant to the Uniform Extradition Act found at Wyo. Stat. Ann. § 7-3-201 *et seq.* (LexisNexis 2007).[1]

[¶ 5] On July 26, 2006, the appellant appeared in a Colorado court, where he pled guilty to, and was sentenced for, the Colorado charges. At the same time, he was served with the governor's warrant and waived extradition to Wyoming. The Colorado sentence ordered the Colorado Department of Corrections to honor the governor's warrant. Rather than being transferred to Wyoming, the appellant began serving his Colorado sentence.[2] While it is, once again, unclear in the record, either the governor's

warrant was withdrawn, or the Wyoming prosecutor simply decided not to pursue it upon receiving advice from the Wyoming Attorney General's Office that, once the appellant began serving his Colorado sentence, "the extradition process is no longer applicable to him," but, rather, "the Interstate Agreement on Detainer (IAD) is now the proper method by which to seek custody . . . ."[3]

[¶ 6] Whatever it is that may have happened in the interim, the appellant, apparently with the assistance of Colorado authorities, prepared a packet of IAD documents, including his Request for Final Disposition of Detainer and Colorado's Offer to Deliver Temporary Custody. The papers appear to have been prepared on November 5, 2006, and signed on November 21, 2006. This paperwork was processed through the Colorado Department of Corrections and was mailed to the Wyoming prosecutor on January 3, 2007. He received it on January 8, 2007. Responsive IAD forms were signed by the prosecutor and judge on January 30, 2007, and were mailed to Colorado by an assistant attorney general on February 9, 2007. The appellant arrived in Campbell County, Wyoming, on February 22, 2007.

[¶ 7] The appellant almost immediately filed a demand for speedy trial, but soon thereafter, due to his attorney's scheduling conflict, moved to continue his preliminary hearing and waived his right to a speedy preliminary hearing. The preliminary hearing was re-scheduled from March 1, 2007 to May 4, 2007. The appellant was bound over

---

1. Many of the documents relied upon by the parties in their briefs do not appear to be part of the district court record, except as attachments to the appellant's Motion to Correct Illegal Sentence, which motion was filed on March 4, 2008, after the case was already on appeal. Similarly, many of the dates relied upon by the parties, and relied upon in this opinion, have been derived from a demonstrative exhibit used by the prosecutor during his argument at the motion hearing, and do not otherwise appear in the record. That exhibit is in the record. In any event, neither party disputes the basic facts or the significant dates.

2. The appellant alleges in his Motion to Correct Illegal Sentence that on June 13, 2006, he filed in the Wyoming court a "Writ of Habeas Cor-

pus," seeking extradition to Wyoming, that on July 25, 2006, he was served with the governor's warrant, and that in an effort to obtain transfer to Wyoming thereunder, he entered into a plea agreement in Colorado under the assumption that, once he was sentenced there, he would be transferred to Wyoming. While this information helps fill in some of the chronological and procedural gaps in this story, it appears in the record only in the form of argument. It has not been raised in such a way as to alter our review of the record facts.

3. This advice was sent in a letter from an assistant attorney general to the prosecutor on August 3, 2006, to follow up on a conversation that took place between them on August 1, 2006.

to district court, where, two weeks before trial, he filed the Motion to Dismiss Pursuant to Wyo. Stat. Ann. § 7–5–10[sic] that is the focus of this appeal. After a hearing, the district court denied the motion. The jury trial began on June 25, 2007. The appellant was found not guilty of aggravated robbery, but guilty of conspiracy to commit aggravated robbery. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] The applicable standard of review is as follows:

> To the extent the issue raised is a question of statutory interpretation, our review is de novo. *Wyodak Resources Development Corporation v. Wyoming Department of Revenue*, 2002 WY 181, ¶ 9, 60 P.3d 129, [135] (Wyo.2002). When a matter has been the subject of a bench trial (or evidentiary hearing) before the district court, we review the factual determinations under a clearly erroneous standard and the legal conclusions de novo. *Union Pacific Railroad v. Trona Valley Federal Credit Union*, 2002 WY 165, ¶ 7, 57 P.3d 1203, [1205] (Wyo.2002).
>
> In construing statutes, our aim is to effectuate legislative intent. *Director of Office of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo.2003). If the language is sufficiently clear, we do not resort to rules of construction. *Id.* We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Id.* We also construe a statute so as to give effect to all of its provisions. *Id.*

With regard to the IAD specifically, it is a federal law subject to federal construction. *Knox v. Wyoming Department of Corrections State Penitentiary Warden*, 34 F.3d 964, 966 (10th Cir.1994). United States Supreme Court interpretations of the IAD are thus binding on state courts. *State v. Reed*, [266 Neb. 641, 668 N.W.2d 245 (Neb.2003) ]. The IAD is a remedial statute and should be liberally construed to achieve its purposes, including a speedy trial and the expeditious and orderly disposition of charges. *Corbin v. Superior Court of the State of Arizona*, 155 Ariz. 365, 746 P.2d 937, 939 (1987). However, it also has strict procedural requirements that must be followed. *Id.*

*Odhinn v. State*, 2003 WY 169, ¶¶ 13–15, 82 P.3d 715, 719–20 (Wyo.2003).

[¶ 9] This Court will affirm the district court's decision on any legal ground appearing in the record. *Armstrong v. Hrabal*, 2004 WY 39, ¶ 56, 87 P.3d 1226, 1244 (Wyo.2004); *Jones v. State*, 602 P.2d 378, 382 (Wyo.1979).

## DISCUSSION

[¶ 10] The IAD is found at Wyo. Stat. Ann. § 7–15–101 *et seq.* (LexisNexis 2007). It is a fairly complex uniform law, structured around enumerated "articles." For purposes of the present discussion, it will be sufficient for us to summarize the pertinent provisions of the pertinent articles. At the outset, we will note that the stated purpose of the Act is to "encourage the expeditious and orderly disposition of" charges pending against persons incarcerated in another jurisdiction. Wyo. Stat. Ann. § 7–15–101 (Article I). The IAD is intended to "be liberally construed so as to effectuate its purposes." *Id.* (Article IX).

[¶ 11] The IAD contemplates the generation of its processes either by the state wherein charges are pending, or by the person incarcerated in another jurisdiction against whom those charges are pending. *Id.* (Articles III and IV). If the proceedings are initiated by the state, the person must be brought to trial within 120 days of that person's arrival in the receiving state. *Id.* (Article IV(c)). If the proceedings are initiated by the person against whom the charges are pending, the person must be brought to trial within 180 days of delivery of his request for disposition. *Id.* (Article III(a)); *Odhinn*, 2003 WY 169, ¶ 19, 82 P.3d at 721; *Green v. State*, 784 P.2d 1360, 1362–63 (Wyo.1989). The IAD's "hammer" is contained in Article V(c):

> (c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or com-

plaint on the basis of which the detainer has been lodged is not brought to trial within the periods provided by this act, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

[¶ 12] We first must determine whether the 180–day period of Article III or the 120–day period of Article IV should be applied in our analysis. In their arguments below, the parties agreed that the appellant had initiated the IAD proceedings and that the 180–day period applied. Not until he filed his Brief in this Court did the appellant contend that Wyoming authorities had initiated the IAD procedures, leading to application of the 120–day period. We will apply the 180–day period of Article III, for two reasons: first, that is consistent with the facts—the request for disposition was initiated by the appellant; and second, we will not consider arguments that were not made below.[4] *Harlow v. State,* 2005 WY 12, ¶ 22, 105 P.3d 1049, 1063 (Wyo. 2005); *Davis v. City of Cheyenne,* 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004).

[¶ 13] As noted above, the 180–day period begins to run when the prisoner has "delivered to the prosecuting officer and the

appropriate court" his request for disposition. Wyo. Stat. Ann. § 7–15–101 (Article III(a)); *Odhinn,* 2003 WY 169, ¶ 18, 82 P.3d at 720. That requirement makes two dates significant in our analysis: November 21, 2006, the date the appellant gave his IAD paperwork to Colorado officials for forwarding to Wyoming, and January 8, 2007, the date that paperwork was received by Wyoming officials. In denying the appellant's motion, the district court applied the following reasoning:

> THE COURT: All right. The Court is going to deny both of those motions. The constitutional challenge, it seems to me, is fairly straightforward in this particular matter. We've had some recent cases that construed this, and the more problematic analysis, when I looked at this last night, was the IAD analysis, and I wondered about that at the time, but now that I have the State's chart, it seems to me that the— while I understand the defense's argument, it seems to me that as a sovereign there's only so much that Wyoming can do. Wyoming can only act when it knows it has to act, and it did that here.
>
> I have some difficulty essentially assigning Colorado's actions to Wyoming. I'm going to find that the start date for this, in fact, was January 8th, the date that the

4. We find ourselves compelled yet again to comment upon the paucity of documentation in this record. The IAD does not apply unless "a detainer has been lodged against" a person who "has entered upon a term of imprisonment in a penal or correctional institution." Wyo. Stat. Ann. § 7–15–101 (Article III; *see also* Article IV). "A detainer is 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Odhinn,* 2003 WY 169, ¶ 4 n. 1, 82 P.3d at 717 n. 1 (quoting *Cuyler v. Adams,* 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 706 n. 3, 66 L.Ed.2d 641 (1981)). Apparently, nobody below questioned whether Wyoming had "lodged a detainer" for the appellant in Colorado. However, no document so entitled, initiated by Wyoming authorities, appears in the record, and the prosecutor's demonstrative exhibit does not mention a detainer initiated by Wyoming. Everyone, including the prosecutor, two Wyoming judges, the appellant, defense counsel, and the Colorado authorities, acted as if such had been done, so we will do the same. Reading the appellate briefs, we are fairly certain that we did not miss something in the

record. In its brief, the State simply pronounces that "[a]t some point in time after Appellant was sentenced in Colorado, Campbell County filed a detainer with the Colorado Department of Corrections." The appellant's brief is more certain as to what happened, claiming that he "was subject to a detainer at the time he consented to the Governor's Warrant," and that "[t]he actual document constituting the detainer is attached hereto as Appendix H." Appendix H is headed "MESSAGE FROM CCIC GREELEY/WELD COUNTY," and appears to be the NCIC "hit" that uncovered the existence of the Wyoming warrant. The closest thing to a detainer found in the record, and that is because it repeats the word "detainer" throughout, is the paperwork prepared by the appellant, with the assistance of the Colorado authorities, and signed on November 21, 2006. Without deciding what, if anything, constituted the detainer in this case, we will accept the facts as seemingly agreed upon by the parties below. That is, we will assume that a detainer was lodged against the appellant by Wyoming in Colorado some time before he signed and sent his Request for Final Disposition of Detainer.

State got notice. And even under that, if we take that analysis from January 8th, then the issue of preliminary hearing almost becomes moot, because we're going to be trying this case within 180 days anyway.

[¶ 14] If the 180–day period is computed from November 21, 2006, it expired on May 20, 2007. If the 180–day period is computed from January 8, 2007, it expired on July 7, 2007. The jury trial began on June 25, 2007. Thus, the trial was timely held according to the State, but not so according to the appellant. Were these the only pertinent facts, *stare decisis* would compel us to agree with the appellant because there is no justification in the record for the delay from November 21, 2006 to January 8, 2007. As we concluded in *Odhinn,* 2003 WY 169, ¶¶ 22–23, 82 P.3d at 722–23, the prosecutor is better situated to bear the brunt of delays caused by the custodial state than is the prisoner. In our case, however, the appellant delayed the Wyoming proceedings by seeking a continuance of the preliminary hearing. That motion delayed the hearing from March 1, 2007 to May 4, 2007—a delay of 64 days. The appellant has provided no facts from which

we could conclude that the length of the delay was unreasonable, or that it should not be attributed to him, thereby tolling the 180–day period. *See Id.,* 2003 WY 169, ¶ 25, 82 P.3d at 723. Consequently, the jury trial was timely commenced under IAD analysis.[5]

## CONCLUSION

[¶ 15] Under Wyo. Stat. Ann. § 7–15–101 (Article III), the jury trial must commence within 180 days of the date that the prisoner has delivered his request for disposition to the prosecutor and court of the charging state. Unreasonable time delays caused by the custodial state do not toll the statutory period. The period is tolled, however, for any amount of time attributable to the prisoner's conduct that renders him unavailable for trial.

[¶ 16] We affirm.

---

**5.** Article VI of the IAD specifically provides that the time periods of both Articles III and IV are tolled during times in which "the prisoner is unable to stand trial." Wyo. Stat. Ann. § 7–15–101 (Article VI). A delay in circuit court waiting for a preliminary hearing obviously delays the setting of a trial in district court.