# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 29

OCTOBER TERM, A.D. 2014

*February 25, 2015*

JEFFERY TURNER,

**Appellant
(Defendant),**

**v.**

S-14-0162

**THE STATE OF WYOMING,**

**Appellee
(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Jeffery Turner entered a conditional guilty plea to a charge of escape from official detention, and thereby reserved the right to appeal the district court's denial of his motion to dismiss.  He claimed in that motion that he had been deprived of his right to a speedy trial under the Interstate Agreement on Detainers (IAD), Wyo. Stat. Ann. § 7-15-101 (LexisNexis 2013).  Although we depart from the district court's reasoning, we affirm.

## ISSUE

[¶2]    We restate the sole issue on appeal as follows:

> Did the speedy trial provisions of the IAD require that the charge against Turner be dismissed?

## FACTS

[¶3]    In 2010, the district court in Albany County sentenced Turner to four to nine years of imprisonment on a larceny conviction.  On March 2, 2012, the Department of Corrections (DOC) transferred him as a pre-parole inmate to a community corrections facility in Laramie County.[1]  Inmates at the community corrections facility are required to hold jobs in the community.  Five weeks after his tranfer, on April 6, Turner failed to return from his job at a Cheyenne Burger King.

[¶4]    This soon prompted action by both the DOC and the Laramie County District Attorney.  On April 9, 2012, the director of the DOC issued an Order of Return to Custody pursuant to Wyo. Stat. Ann. § 25-1-104(j).[2]  A little more than a week later, the district attorney filed an information charging Turner with escape from official detention under Wyo. Stat. Ann. § 6-5-206(a)(i), and the circuit court issued an arrest warrant.  Later in 2012, Texas law enforcement officers evidently found Turner in the Austin area of Travis County, Texas, a location he often called home.

[¶5]    The record tells us nothing about how Texas law enforcement officers came into contact with him, but it does contain a waiver of extradition he signed on December 28, 2012.  The waiver indicates he was being held by the sheriff in Travis County at least in

---

[1] Such transfers are authorized by Wyo. Stat. Ann. § 7-18-109 (LexisNexis 2013).
[2] This order does not appear in the record.  The district attorney referred to it and its date of issue in a pleading, and its existence was confirmed by a copy of the extradition waiver that Turner executed in Texas and later presented to Wyoming courts in conjunction with his efforts to have his escape charge dismissed.  We presume that the order requested law enforcement, detention facilities, and correctional facilities to hold Turner and notify the DOC so that he could be brought back to Wyoming to face incarceration on the Albany County sentence.

1

part on the authority of the DOC Order of Return and the Laramie County warrant. The district attorney also suggested that Turner was simultaneously being held on a Texas charge.[3]

[¶6]   The waiver of extradition indicates that Turner was advised of and waived his right to demand the issuance and service of a formal gubernatorial requisition and extradition warrant before being transferred from Texas into Wyoming's custody on the basis of the DOC order and Laramie County escape charge. Those rights are not provided by the IAD, but are instead granted by the Uniform Criminal Extradition Act (UCEA), codified in Wyoming by Wyo. Stat. Ann. §§ 7-3-201 through 227 (LexisNexis 2013), and in Texas by Tex. Code Crim. Proc. Ann. art. 51.13 (2013). Like the IAD, the UCEA provides a means to effect the transfer of a wanted person from one state to another. However, only the latter would require (absent a waiver) that Wyoming's governor make a formal demand for extradition to the governor of Texas, and that he in turn then issue an equally formal governor's warrant authorizing Turner's return to Wyoming.

[¶7]   Turner does not contest the State's representations to the district court that, on the basis of his waiver of extradition, he was delivered to the medium security correctional institution in Torrington to complete his Albany County larceny sentence on January 17, 2013. On August 7, 2013, he filed a pro se motion to dismiss the escape charge in the circuit court, claiming a violation of his Sixth Amendment right to a speedy trial. Turner did not serve the district attorney with that motion. On September 9, 2013, the district attorney sought and was granted a writ of habeas corpus *ad prosequendum*[4] to have Turner brought to Laramie County for an initial appearance on the escape charge.

---

[3] Turner attached to his brief a document indicating that on October 12, 2012, he had been charged with the offense of "Fail to ID/Fugitive," was convicted upon his no contest plea to that charge on December 12, 2012, and was sentenced to 120 days in the Travis County jail. The stated offense seems to conform to Tex. Penal Code Ann. § 38.02(d) (2013), which makes it a misdemeanor for a fugitive from justice to refuse to give identifying information to a law enforcement officer, or to give the officer false identifying information. However, Turner never put that document before the district court. Thus, it is not properly before this Court as a matter of record, and it is not the proper subject of a motion to supplement the record. *See Harlow v. State*, 2003 WY 47, ¶ 87, 70 P.3d 179, 206 (Wyo. 2003); *Gifford v. Casper Neon Sign Co., Inc.*, 618 P.2d 547, 550-51 (Wyo. 1980). Consequently, we will not consider it in evaluating the district court's disposition of Turner's motion to dismiss. We nevertheless note that the 120-day Texas sentence would have expired, at the latest, on April 10, 2013, and likewise note authority for the proposition that the speedy trial limitations of the IAD become inapplicable if, prior to their expiration, the defendant's sentence in the sending state comes to an end. *State v. Butler*, 496 So.2d 916, 917 (Fla. Dist. Ct. App. 1986); *Pristavec v. State*, 496 A.2d 1036, 1038-39 (Del. Supr. 1985); *see also State v. Frohnhofer*, 264 P.3d 739, 742 (N.M. Ct. App. 2011).

[4] "You have the body to prosecute" in Latin. This is a writ used in criminal cases to bring a prisoner before the court to be tried on charges other than those for which he is currently confined. Black's Law Dictionary 825 (10th ed. 2014).

[¶8]    On September 27 and October 21, Turner's attorney filed nearly identical demands for a speedy trial under the federal and state constitutions and W.R.Cr.P. 48.  Then, on October 25, 2013, he filed a motion to dismiss the escape charge due to an alleged failure to bring his client to trial within the time limits contained in Wyoming's IAD statute, § 7-15-101.

[¶9]    Articles III and IV of the IAD respectively allow the defendant or the State to initiate the transfer of the defendant from out-of-state custody to Wyoming.  Under Article III, Turner's trial would have had to begin within 180 days after the Wyoming prosecutor and district court received proper written notice of his request for disposition of pending charges.  Wyo. Stat. Ann. § 7-15-101 art. III(a).[5]  Under Article IV, his trial would have had to begin within 120 days of arriving in Wyoming.  *Id.*, art. IV(c).  He was not clear, however, whether the "request for disposition" to which he referred was the waiver of extradition that he executed in Texas, or the letters he sent to the clerk of court in Laramie County after being returned to Torrington from Texas.

[¶10]  The State's response on November 12, 2013 made only one point that was truly relevant to the applicability of the IAD:  there was no evidence that he ever filed an IAD demand for final disposition of the escape charge.  The district court heard Turner's motion to dismiss on November 25 and issued an order denying it on December 3, 2013.

[¶11]  In its order, the court indicated that Turner had not proved that he was serving a term of imprisonment in Texas at the time he waived extradition; he had only shown that he was confined in a county jail.  Consequently, it concluded that the IAD had no bearing on the effect of the waiver he signed in Texas, and that the waiver could not be deemed a demand for final disposition.

[¶12]  The court also concluded that letters Turner sent from Torrington to the district court clerk could not be read to constitute a demand for final disposition.  However, it held that the pro se motion to dismiss he had filed in the Laramie County Circuit Court on August 7, 2013, after he was incarcerated in Torrington, would be treated as a request for a final disposition.[6]  The court used the date of that earlier motion to determine that the time period during which he could be tried for escape had not yet expired.

[¶13]  On January 27, 2014, Turner entered a conditional guilty plea and was sentenced on the Laramie County escape charge.  His plea agreement preserved the right to appeal

---

[5] Wyoming's version of Article III says a prisoner returned on a detainer "shall be brought to trial at the next term of court . . . ."  However, we have acknowledged that the IAD is a federal law subject to federal construction.  *Short v. State*, 2009 WY 52, ¶ 8, 205 P.3d 195, 198 (Wyo. 2009).  Federal law requires that a prisoner returned for trial on other charges under Article III be tried within 180 days. *Cuyler v. Adams*, 449 U.S. 433, 444, 101 S. Ct. 703, 709-10, 66 L. Ed. 2d 641 (1981).

[6] This was incorrect.  By its terms, the IAD governs only certain cases of interstate rendition of prisoners, and it does not apply to intrastate prisoner transfers.

the district court's order denying his motion to dismiss, and he was sentenced to serve twelve to eighteen months concurrently with the sentence remaining on his Albany County larceny conviction. He timely perfected this appeal.

## DISCUSSION

[¶14] Whether the speedy trial provisions of the IAD are applicable to Turner's case is a question of law that we review de novo. This Court will affirm the decision of the district court on any legal ground appearing in the record. *Short v. State*, 2009 WY 52, ¶¶ 8-9, 205 P.3d 195, 198 (Wyo. 2009).

[¶15] The purpose of the IAD is "to encourage the expeditious and orderly disposition" of untried charges pending against persons incarcerated and serving a sentence in another jurisdiction where a detainer has been lodged based on such charges. *Id.*, ¶ 10, 205 P.3d at 198. Its ultimate aim is to resolve uncertainties created by those detainers which may "obstruct programs of prisoner treatment and rehabilitation." Wyo. Stat. Ann. § 7-15-101 art. I. The IAD, and thus its procedural provisions, including its speedy trial provisions, does not apply to untried charges upon which no detainer has been lodged. *Short*, ¶ 12 n.4, 205 P.3d at 199 n.4; *Layton v. State*, 2007 WY 1, ¶ 12, 150 P.3d 173, 177 (Wyo. 2007).

[¶16] Turner suggests both that he was transported to Wyoming at his own request for final disposition under Article III(a) and that he was transported here at Wyoming's request under Article IV(a), and that the time during which he had to be tried (180 or 120 days) had expired so that Wyoming should have been prohibited from trying him for escape. Therefore, he contends, the district court erred in denying his motion to dismiss.

[¶17] Both of the articles Turner relies upon require that a detainer be lodged. Article III(a) provides that:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state,[7] and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint **on the basis of which a detainer has been lodged against the prisoner**, he shall be brought to trial at the next term of court after he shall have caused to be delivered to the prosecuting officer and the

---

[7] Authorities are split as to whether the term "imprisonment in a penal or correctional institution of a party state" includes sentences served in county jails. 5 Wayne R. LaFave, et al. *Criminal Procedure* § 18.4(c) n.36 (3d ed. updated 2014); *Dawes v. State*, 135 So.3d 420, 422-24 (Fla. Dist. Ct. App. 2014). We do not need to reach that question, however, because the State lodged no detainer, and Turner made no request for final disposition.

appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; . . . .

Wyo. Stat. Ann. § 7-15-101 art. III(a) (emphasis added). Article IV(a) provides as follows:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner **against whom he has lodged a detainer** and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; . . . .

*Id.*, art. IV(a) (emphasis added)

[¶18] When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words used in it, and we do not resort to rules of statutory construction. *Redco Const. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415-16 (Wyo. 2012). The language in the foregoing sections could not be clearer. A detainer must be lodged before the Interstate Agreement on Detainers applies.

[¶19] A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Layton*, ¶ 5 n.2, 150 P.3d at 175 n.2; *Short*, ¶ 12 n.4, 205 P.2d at 199 n.4. It asks the institution to either hold the prisoner for an agency in the other jurisdiction or to notify it when the prisoner's release is imminent. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The detainer must be lodged by a prosecutor from the "receiving state"—the state having an untried charge pending against the prisoner—with the custodial institution in the "sending state"—the state where he is then serving a sentence. Wyo. Stat. Ann. § 7-15-101 art. II(a)(ii) and (iii). In Turner's case, Wyoming is the receiving state and Texas is the sending state.

[¶20] Our definition of the term "detainer" contemplates an affirmative and purposeful act by the prosecutor in the receiving state. The prosecutor must direct a communication to a particular institution, and that communication must seek a prisoner's continued detention following the completion of his current sentence in that institution for the purpose of facing existing charges in the prosecutor's jurisdiction. The mere discovery of Wyoming charges against Turner by Texas law enforcement officers, perhaps by way of

an NCIC "hit" or some other means, does not fall within that definition. *See Short*, ¶ 12 n.4, 205 P.2d at 199 n.4.

[¶21] Turner produced no evidence that prosecutors or law enforcement in Laramie County ever communicated with county jail officials or law enforcement in Travis County, Texas. In fact, the record suggests that the Laramie County District Attorney's office was unaware that he was confined in Wyoming until he began to make pro se filings in the circuit court. Moreover, the fact that his waiver of extradition refers to procedures that would apply only under the extradition statutes strongly suggests that Texas authorities learned of Turner's difficulties with the law in Wyoming by some means other than a detainer. The absence of any evidence of a detainer is highly unusual and serves to differentiate Turner's case from other recent IAD cases such as *Short*, *Layton*, *supra*, and *Odhinn v. State*, 2003 WY 169, 82 P.3d 715 (Wyo. 2003) (Albany County Sheriff's Office requested a detainer). That lack of evidence alone militates against a conclusion that the IAD applied.

[¶22] With respect to an Article IV transfer, the prosecutor must file both a detainer and a separate written request for temporary custody that must be approved, recorded, and transmitted by the court in the receiving state having jurisdiction over the untried charge to the authorities in the sending state having custody of the prisoner. Wyo. Stat. Ann. § 7-15-101 art. IV(a) and (b). The prisoner must be notified of the detainer. *Id.*, art. III(c). Turner has pointed to no evidence that the Laramie County District Attorney's office did any of the things necessary to effect an Article IV transfer.

[¶23] With regard to Turner's Article III claim, there is likewise no evidence that he composed the required notice or transmitted it to jail officials in Texas for forwarding to Wyoming. Indeed, on appeal and in the district court, he points to his extradition waiver and various letters and court pleadings created after his return to Wyoming, and he asks that they be recognized as substitutes for the notice and certification required by Article III. Proper delivery of the requisite notice and certification is not an empty formality because it advises receiving state officials that there is such a request which triggers the speedy trial limitations contained in the Act, and therefore adherence to that requirement is necessary to validly invoke Article III. *State v. Springer*, 406 S.W.3d 526, 534 (Tenn. 2013); *State v. Mangum*, 291 P.3d 44, 49-52 (Idaho Ct. App. 2012); *State v. Moe*, 581 N.W.2d 468, 471 (N.D. 1998); *see also State v. Smith*, 858 P.2d 416, 417-19 (N.M. App. 1993).

[¶24] We conclude that no detainer was ever lodged, and that the IAD therefore does not apply. Moreover, Turner never made a request for final disposition until he had already returned to Wyoming, where the IAD did not apply because he was confined in this state. We therefore affirm.